UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOREEN SUTTLES,

                        Plaintiff,

v.                                                             8:14-CV-0581
                                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER      MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court St.
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.        HEETANO SHAMSOONDAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 15.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Doreen Suttles ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 14.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on January 8, 1970. (T. 161.) She completed the 10th grade. (T. 167.) Generally, Plaintiff's alleged disability consists of chronic obstructive pulmonary disease ("COPD") and asthma. (T. 166.) Her alleged disability onset date is March 15, 2010. (T. 161.) Her date last insured is September 30, 2010. (*Id.*) She has past relevant work as a fast food worker, laborer, laundry worker, knitting machine operator, and sales route driver. (T. 31.)

### B. Procedural History

On May 16, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 145.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 24, 2012, Plaintiff appeared before the ALJ, Terence Farrell. (T. 38-81.) On December 28, 2012, ALJ Farrell issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 19-37.) On May 8, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 24-33.) First, the ALJ found that Plaintiff met the insured status requirements through September 30, 2010 and Plaintiff had not engaged in substantial gainful activity since March 15, 2010. (T. 24.) Second, the ALJ found that Plaintiff had the severe impairments of COPD, obesity, major depression, and an anxiety disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 26.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (T. 28.)[1] The ALJ determined that Plaintiff was only able to lift, carry, push and pull ten pounds occasionally and lift, carry, push, pull less than ten pounds frequently. (*Id.*) In addition, Plaintiff could:

> Stand for six hours during the course of a normal workday with normal breaks, but [could] only walk short distances of several feet at a time, several times per day; [was] able to sit for six hours during the course of a normal workday with normal breaks; [was] limited to relatively low stress work requiring only occasional interactions with co-workers, supervisors and the general public; must avoid concentrated exposure to respiratory irritants such as dust, fumes, gases, and other respiratory irritants; and may need to use a nebulizer one time during a workshift requiring approximately [ten] minutes of time.

(*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 31-32.)

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567, 416.967.

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially seven separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ erred in affording weight to the medical opinions of the record.  (Dkt. No. 11 at 15-20 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ erred in his step three determination.  (*Id.* at 20-21.)  Third, Plaintiff argues erred in his credibility determination.  (*Id.* at 21-25.)  Fourth, Plaintiff argues the ALJ failed to take into consideration Plaintiff's impairments in combination.  (*Id.* at 25-34.)  Fifth, Plaintiff argues the AC failed to consider new and material evidence.  (*Id.* at 34-38.)  Sixth, Plaintiff argues the ALJ erred at step five.  (*Id.* at 38-40.)  Seventh, and lastly, Plaintiff argues the Court should remand for payment of benefits.  (*Id.* at 40-41.)

### B. Defendant's Arguments

In response, Defendant makes six arguments.  First, Defendant argues the ALJ and AC properly evaluated the medical opinion evidence.  (Dkt. No. 14 at 4-7 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly determined Plaintiff's COPD did not meet or equal Listing 3.02.  (*Id.* at 7-9.)  Third, Defendant argues the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 9-12.)  Fourth, Defendant argues the ALJ's RFC finding was supported by substantial evidence.  (*Id.* at 12-15.)  Fifth, Defendant argues substantial evidence supported the ALJ's step five finding.  (*Id.* at 15-17.)  Sixth, Defendant argues evidence submitted to the AC offered no basis for changing the ALJ's decision.  (*Id.* at 17-19.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of

6

the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

For ease of analysis, Plaintiff's arguments will be address out of order and in a consolidated manner.

### A. Whether the ALJ Properly Weighed the Medical Opinions in the Record.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 4-7 [Def.'s Mem. of Law].) The Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id. see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (*quoting Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff appears to argue that the ALJ erred in assigning more weight to the opinion of a consultative examiner, Dr. Wassef, than to the opinion of Plaintiff's treating pulmonologist, Dr. Kabeli, because the consultative examiner's area of expertise was pediatrics, not pulmonology. (Dkt. No. 11 at 19 [Pl.'s Mem. of Law].) In support of her argument, Plaintiff relies on *Martin v. Colvin,* No. 8:11-CV-1431, 2013 U.S. Dist. LEXIS 69214 (N.D.N.Y. Mar. 29, 2013), in which this Court held that the ALJ erred in providing more weight to a consultative examiner's opinion over plaintiff's treating physician.[2] However, the Court in *Martin* did not conclude that the ALJ erred solely because the treating physician was a specialist and the consultative examiner was not. The Court reasoned that the ALJ erred in affording the examiner more weight than the treating physician because not only was the consultative examiner not a specialist, his findings were outdated and unsupported. *Martin*, 2013 U.S. Dist. LEXIS 69214, at *54. Further, the Court in *Martin* acknowledged that the opinion of a consultative examiner may constitute substantial evidence to support an RFC determination. *Id.*

First, as acknowledged in the *Martin* case, the opinion of a consultative examiner may constitute substantial evidence. *See Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010) (an ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence). Here, Dr. Wassef opined Plaintiff "should not be exposed to extremes in temperature, second-hand smoke, perfumes, chemicals, or any type of respiratory irritants." (T. 393.) The ALJ afforded Dr. Wassef's opinion "great weight" and the RFC determination reflected the limitations imposed by Dr. Wassef. (T. 28, 31.)

---

[2]  A Westlaw citation is unavailable for this case.

8

Plaintiff received treatment for her COPD from pulmonologist, Dr. Kabeli.  In August of 2012 Dr. Kabeli examined Plaintiff and noted Plaintiff generally appeared in no distress and was able to sit comfortably on the examination table without difficulty or pain.  (T. 469.)  Dr. Kabeli further observed Plaintiff's lungs were clear to auscultation and percussion, and Plaintiff had no wheezing, rales, rubs or rhonchi.  (*Id.*)  Dr. Kabeli counseled Plaintiff on the importance of smoking cessation.  (*Id.*)  Dr. Kabeli followed up with Plaintiff in September of 2012.  Again, Dr. Kabeli noted Plaintiff appeared well, and was able to sit comfortably on the examination table without difficulty or pain.  (T. 462.)  On examination, Dr. Kabeli observed "end-expiratory wheeze," but noted Plaintiff was not in respiratory distress.  (*Id.*)  Dr. Kabeli opined that Plaintiff had "severe COPD" and advanced lung disease; however, Dr. Kabeli "encouraged [Plaintiff] to stay active and walk or exercise on a regular basis."  (*Id.*)  Dr. Kabeli noted that she spent time "very strongly discussing the importance of tobacco cessation."  (*Id.*)  Dr. Kabeli did not prescribe any specific functional limitations.

Dr. Wassef's functional limitations are supported by Dr. Kabeli's treatment notes.  Dr. Kabeli's and Dr. Wassef both observed that Plaintiff was in no distress, and that her chest was clear to auscultation and percussion.  (T. 391, 392, 462.)  Although Dr. Kabeli was a pulmonologist and Dr. Wassef was not, their observations and assessments support each other.  Even if the ALJ were to afford Dr. Kabeli's opinion controlling weight, the RFC determination would not be altered because Dr. Kabeli does not impose limitations greater than Dr. Wassef.  Affording a non-specialist weight over a specialist in and of itself does not constitute error. The ALJ did not err in affording Dr.

Wassef "great weight" over pulmonologist, Dr. Kabeli, because Dr. Wassef's functional limitations were supported by substantial evidence, including Dr. Kabeli's observations.

> **B.      Whether the ALJ's Step Three Analysis was Supported by Substantial Evidence.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 14 at 7-9 [Def.'s Mem. of Law].)  The Court adds the following analysis.

At step three of the sequential process the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.926) ("the Listings").  If Plaintiff's impairments, or combination of impairments, meets or medically equals the criteria of a Listing and meets the duration requirement, Plaintiff is disabled.  *Id.* at §§ 404.1509, 416.909.  If Plaintiff does not meet or equal a Listing, the analysis proceeds to the next step.

At step three of the sequential process the ALJ determined that Plaintiff's impairment or combination of impairments did not meet or equal a Listing.  (T. 26-28.)  The ALJ considered Listing 3.02: Chronic pulmonary insufficiency, Listing 3.03: Asthma, and Listing 12.04: Affective Disorders.  (*Id.*)

Plaintiff argues the ALJ erred in his assessment of Listing 3.02.  (Dkt. No. 11 at 20-21 [Pl.'s Mem. of Law].)[3]  In order to meet or equal Listing 3.02A a plaintiff's pulmonary function testing must be equal to or less than the values specified in a table.

---

[3] Plaintiff does not argue the ALJ erred in his determination that Plaintiff did not meet or equal Listings 3.03 or 12.04.

10

For our purposes, a person who is 68-69" in height must have a forced expiratory volume ("$FEV_1$") equal to or less than 1.45.[4] Listing 3.02A, Table 1. A person who is 66-67" in height must have a $FEV_1$ equal to or less than 1.35. *Id.*

Plaintiff underwent pulmonary testing with Dr. Kabeli and Dr. Wassef. Dr. Kabeli observed Plaintiff's $FEV_1$ was 1.37 pre-bronchodilator and 1.65 post-bronchodilator. (T. 463.) Dr. Wassef's testing indicated Plaintiff's $FEV_1$ was 2.15, 72% of predicted, without a bronchodilator. (T. 394.) The Listing states testing "should be repeated after administration of an aerosolized bronchodilator under supervision of the testing personnel if the pre-bronchodilator $FEV_1$ value is less than 70 percent of the predicted normal value; [i]f a bronchodilator is not administered, the reason should be clearly stated in the report." Listing 3.00E. Dr. Wassef's report does not state why a bronchodilator was not administered; however, it is assumed that one was not administered because the percentage predicted was more than 70 percent.

Plaintiff urges the adoption of Dr. Kabeli's pre-bronchodilator $FEV_1$ value of 1.37. (Dkt. No. 11 at 21 [Pl.'s Mem. of Law.]) Here, the ALJ properly assessed Plaintiff's COPD at step three. Listing 3.02 states that "[t]he highest values of the $FEV_1$ . . ., whether from the same or different tracings, should be used to assess the severity of the respiratory impairment." In outlining the use of a bronchodilator, the Listing further states "[t]he values in paragraphs A and B of 3.02 must only be used as criteria for the level of ventilatory impairment that exists during the individual's most stable state of health (i.e., any period in time except during or shortly after an exacerbation)." Listing 3.02. If Plaintiff was 66"-67" in height, as indicated by the majority of her providers, both

---

[4] Plaintiff asserts she is 5'8" (68"). (T. 166.) Plaintiff's physicians have noted her height at 67" (T. 219, 391), 66" (T. 226), 66.25" (T. 480) and 68" (T. 462).

of Dr. Kabeli's $FEV_1$ findings would exceed those in the Listing. If Plaintiff was 68" in height as she asserted, Dr. Kabeli's pre-bronchodilator findings would meet the criteria of the Listing. However, even assuming Plaintiff was 68" in height, the Listing directs the ALJ to rely on the highest values obtained during testing, which would be 2.15 under Dr. Wassef's testing or 1.65 under Dr. Kabeli. Therefore, the ALJ properly assessed Plaintiff's COPD at step three of the sequential process and remand is not recommended.

Plaintiff also argues the ALJ erred in assessing Plaintiff's obesity in the context of Listing 3.00. (Dkt. No. 11 at 29-30 [Pl.'s Mem. of Law].) At step three, the ALJ relied on the medical testing and opinion evidence of Dr. Kabeli and Dr. Wassef. (T. 26.) Dr. Kabeli noted Plaintiff height and weight, she observed Plaintiff was "well-developed, well-nourished," but makes no mention of Plaintiff being 'obese.' (T. 462.) Dr. Wassef noted Plaintiff's weight and height and diagnosed her with obesity. (T. 391, 393.) The Second Circuit has held that "an ALJ implicitly factor[s] a claimant's obesity into his RFC determination by relying on medical reports that repeatedly noted [the claimant's] obesity and provided an overall assessment of her work-related limitations." *Drake v. Astrue,* 443 F. App'x 653, 657 (2d Cir. 2011). The same reasoning can be applied here, the ALJ implicitly factored in Plaintiff's obesity into his step three determination by relying on medical reports, such as Dr. Wassef, that noted the Plaintiff's obesity.

**C.     Whether the ALJ Properly Assessed Plaintiff's Credibility.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 9-12 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see also* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

In his credibility assessment, the ALJ outlined the factors he must consider in addition to the objective medical evidence. (T. 29-30.) The ALJ discussed Plaintiff's testimony regarding her symptoms and their limiting effects, her medications and their side effects, her daily activities, her lack of mental health treatment, and her failure to cease smoking. (T. 30.) Plaintiff argues the ALJ erred in her credibility determination because she improperly relied on Plaintiff's continued smoking habit. (Dkt. No. 11 at 24-25 [Pl.'s Mem. of Law].)

To be sure, the ALJ's assessment of Plaintiff's failure to cease smoking was improper. Although an ALJ may find a plaintiff less credible if she failed to follow medical treatment, the ALJ is obligated to consider any explanation a plaintiff may have for the failure. SSR 96-7p states that a plaintiff's statements:

> may be less credible [. . . ] if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7P (S.S.A. July 2, 1996). The ALJ did not take into consideration any good reason for Plaintiff's failure to cease smoking. Further, "[g]iven the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of

14

smoking on a person's health." *Goff v. Astrue*, 993 F. Supp. 2d 114, 128 (N.D.N.Y. 2012) (citing *Riechl v. Barnhart*, No. 02-CV-6169, 2003 WL 21730126, at *13 (W.D.N.Y. June 3, 2003). However, despite the ALJ's improper reliance on Plaintiff's failure to cease smoking, the ALJ's credibility determination was still supported by substantial evidence.

In making his credibility determination the ALJ relied on objective medical evidence which was inconsistent with Plaintiff's statements regarding the disabling effects of her impairments. For example, Dr. Kabeli opined Plaintiff had "severe COPD;" however, he also advised Plaintiff to stay active, walk, and exercise on a regular basis. (T. 462.) Dr. Wassef opined Plaintiff should not be exposed to extremes in temperature, second-hand smoke, perfumes, chemicals, or respiratory irritants. (T. 393.) The ALJ also relied on Plaintiff's activities of daily living which were inconsistent with her level of complaints and the treatment Plaintiff used to help alleviate symptoms. (T.30.) The ALJ did acknowledge that Plaintiff used a nebulizer daily, which was consistent with medical evidence. (T. 28.) The ALJ's RFC determination accounts for the use of a nebulizer. (*Id.*) Therefore, the ALJ's error in his discussion of Plaintiff's failure to cease smoking was harmless because substantial evidence supported the ALJ's overall credibility determination.

### D. Whether the ALJ Properly Assessed Plaintiff's Obesity, Learning Disorder, and Mental Impairments.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 12-15 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's RFC is "the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

Plaintiff first argues she is disabled due to her COPD. (Dkt. No. 11 at 27-28 [Pl.'s Mem. of Law].) In support of her argument Plaintiff relies on her own subjective complaints and failed to provide any medical evidence in the record to support her argument. (*Id.*) As discussed in Part IV.C, the ALJ properly assessed Plaintiff's credibility and found that her subjective complaints were not supported by the objective medical evidence and other evidence in the record. Therefore, the ALJ did not err in failing to find Plaintiff disabled due to her COPD based on her subjective complaints.[5]

Plaintiff argues the ALJ failed to assess her obesity in combination with her other impairments. (*Id.* at 28.) As discussed in Part IV.B., the ALJ properly assessed Plaintiff's obesity in combination with her COPD because the ALJ relied on medical opinion evidence that took into consideration Plaintiff's weight. The ALJ took note of Plaintiff's obesity throughout his decision and analysis.

Plaintiff also argues the ALJ failed to properly consider her learning disorder and borderline intelligence. (*Id.* at 30.) Plaintiff argues the ALJ failed to develop the record regarding Plaintiff's alleged borderline intellectual functioning because the ALJ did not order an intelligence exam. (*Id.*) To be sure, an ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. §§ 404.1512(d), 416.912(d). However, reviewing courts have held that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa*

---

[5] Plaintiff also argues that the ALJ failed to properly consider the effects of her mental impairments, because the ALJ improperly relied on Plaintiff's lack of mental health treatment. (Dkt. No. 11 at 33 [Pl.'s Mem. of Law].) However, this is essentially a credibility argument, and as discussed in Part IV.C, substantial evidence supported the ALJ's credibility determination.

*v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012). Further, whether or not a consultative exam is obtained is made on a case-by-case basis and at the discretion of the Commissioner. 20 C.F.R. §§ 404.1517, 404.1519, 416.917, 416.919.

      Here, the record did not have an "obvious gap" because the record failed to indicate a severe intellectual impairment that would require additional testing or evidence. Consultative examiner, Brett Hartman, Psy.D, opined that Plaintiff's intellectual functioning "appeared" to be "somewhat below the average range;" however, she was still capable of following and understanding simple directions, maintaining a schedule, and making appropriate decision. (T. 406.) He opined she would have "moderate" difficulty dealing appropriately with others and normal stressors of life. (*Id.*) Dr. Hartman's limitations are reflected in the ALJ's RFC determination which limits Plaintiff to "low stress work" and only "occasional" interaction with co-workers, supervisors and public. (T. 28.)

      Therefore, the ALJ was within his discretion to not order an intelligence evaluation where the record did not contain any obvious gaps and the record failed to indicate an intellectual impairment that prevented Plaintiff from performing more than simple work. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. App'x. 29, 32 (2d Cir.) (finding an ALJ was obligated to order a consultative examination where the facts did not warrant or suggest the need for it).

### E. Whether the ALJ's Step Five Determination was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 15-17 [Def.'s Mem. of Law].) The Court adds the following analysis.

Because we find no error in the ALJ's RFC assessment and credibility determination, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

### F. Whether the Appeals Council Properly Assessed New Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at 17-19 [Def.'s Mem. of Law].) The Court adds the following analysis.

The AC will consider new and material evidence only where it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). If it relates to that time period, the AC will review the evidence to determine if the ALJ's actions, findings, or conclusion are contrary to the weight of the evidence currently on record. *Id.* If the evidence provided "does not add so much as to make the ALJ's decision contrary to the weight of the evidence" remand is not necessary. *Rutkowski v. Astrue*, 368 F.App'x 226, 229 (2d Cir. 2010). Evidence is "new if it is not merely cumulative of what is already in the record, and is material if it is both (1) relevant to the claimant's condition during the time period for which benefits have been denied-that is, the period on or before the ALJ's decision, and (2) probative-

in other words, that there is a 'reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently'." *Webb v. Apfel,* No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir .1990)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Webb,* 2000 WL 1269733, at *14. If the AC fails to consider new and material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009).

Plaintiff argues the AC failed to properly consider evidence consisting of a psychological evaluation dated May 17, 2013 from Richard F. Liotta, Ph.D., which was dated six month after the ALJ decision. (Dkt. No. 11 at 38 [Pl.'s Mem. of Law].) The AC determined that Dr. Liotta's opinion was new; however, it was not relevant to the time period in question. (T. 2.) To be sure, opinions generated after an ALJ's decision may be used to illuminate the severity and continuity of Plaintiff's impairments if the evidence concerns the relevant time period. *See Collins v. Comm'r of Soc. Sec.,* 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) (*citing Stober v. Astrue*, 2010 WL 7864971, at *15 (D.Conn. July 2, 2010). However, Dr. Liotta examined Plaintiff once, not during the relevant time period, and his opinion was not retrospective. Dr. Liotta's opinion, while new, was not also not material because it did not "add so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski*, 368 F.App'x at 229. Therefore, the AC did not err in its determination.

19

### G. Whether Remand for Payment of Benefits is Warranted.

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 at [Def.'s Mem. of Law].) The Court adds the following analysis.

The Second Circuit has held that in some cases it is appropriate to remand for payment of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," *Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005), and evidence of disability is "overwhelming," *Shaw v. Chater,* 221 F.3d 126, 135 (2d Cir. 2000). Substantial evidence supports the ALJ's disability determination, therefore because remand is not recommended, neither is remand for calculation of benefits.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 27, 2015

_____
William B. Mitchell Carter
U.S. Magistrate Judge